PHILLIPS v. FABER SULKY CO.

(Circuit Court, W. D. New York. April 14, 1908.)

No. 206.

PATENTS—INFRINGEMENT—SPEED WAGON.
    The Phillips patent, No. 611,438, for a speed wagon, was not anticipated and discloses invention; also *held* infringed.

In Equity. On final hearing.

Roberts, Becker, Messer & Groat (Tracy C. Becker and Alfred L. Becker, of counsel), for complainant.

George B. Selden (Ernest Wilkinson and Samuel T. Fisher, of counsel), for defendant.

HAZEL, District Judge. The bill charges infringement of patent No. 611,438, issued to complainant on September 27, 1898, for improvements in speed wagons—light four-wheeled vehicles with narrow bodies, used chiefly on circular racing tracks with fast running horses. The body of the speed wagon is supported on a running gear of peculiar style or construction, consisting of front and rear portions, each carrying on spindles the front and rear wheels. These two portions of the running gear are not directly connected with each other, but are separately attached to the vehicle body, and, except for the fifth wheel and the thill couplings carried by the front portion, they are substantially similar in construction. The novel features of the frame of the wagon are claimed to exist in the employment of a so-called double truss, which carries the fifth wheel at its front portion; its lower ends extending downwardly to the inner ends of the wheel spindles. The arched and rearwardly inclined brace engages at its extremities the extremities of the spindles. By this arrangement the arched brace connects with the spindles on the outside of the wheels, the spindles become a part of the wagon frame, and rigidity of the spindles is secured.

The patent has 11 claims, all of which are in issue except the fifth, sixth, and ninth. The first claim, which contains the important elements, may be fully set forth, and an epitome of the others will suffice to enable an understanding of the controversy. Claim 1 reads as follows:

"1. A speed wagon consisting of front and rear truss-frames carrying the wheel spindles, each frame extending upward perpendicularly from the spindles, an arched brace for each frame and its set of spindles arranged at an angle of substantially forty-five degrees to the said frame, and a wagon body connecting said frames and having said arched braces bearing against the bottom of the same, said braces having substantially straight portions at their bearing against the body, substantially as described."

The essential elements of this claim are (1) front and rear truss-frames carrying the wheel spindles perpendicularly from the spindles; (2) an arched brace for each frame and its set of spindles, arranged at an angle of substantially forty-five degrees to said frame; (3) a wagon body, connecting said frame and having the arched braces bearing against the bottom of the same. Claim 2 is similar to the first, and includes "the inwardly and upwardly inclined arched brace"; claim 3 is broader, and embraces the feature of separate frames for the front and rear; claim 4 is for the running gear, including a thill connection directly above the spindles; claim 7 is for an arched supporting frame, the spindles and inclined brace, and the fifth wheel; claim 8 is substantially the same as the preceding claim, except that it mentions "lateral arched braces"; claim 10 specifically relates to the combination, including a king-bolt support; and the eleventh claim is for a front arched frame and brace in combination with the fifth wheel. In his specification the patentee says:

"My invention has reference to speed wagons; and the object of the invention is to overcome and remedy certain material defects in speed wagons as they are now constructed, all substantially shown and described and particularly pointed out in the claims."

According to the evidence the defects in the speed wagon consisted of objectionable strains, vibrations, and swaying on the fifth wheel, due to the high speed which race horses attain in running with vehicles of this class. Emphasis is laid upon the feature of the patent by which the truss frames are. arranged perpendicularly to the wagon body and the brace frames extend approximately at an angle of 45 degrees to the body. The problem presented to the inventor, and which he designed to solve, was to remove the strain caused by the weight of the pull of the driver from the running gear and the kingbolt to the arched brace. Speaking on this point the patentee says:

"So perfectly does this construction and arrangement of parts operate that I can use a materially lighter running gear than before, with greatly improved effects in rigidity of frame and action on the road."

The defendant contends that the claims in controversy lack patentable invention, and, even should the court sustain them as covering a combination of elements, that it does not infringe, because the details of construction, together with the arrangement of the brace and truss frames at an angle of substantially 45 degrees, is wholly absent in its construction. The complainant, however, rejoins that as far as the particular construction is concerned he was a pioneer, and therefore a broad construction must be given to the claims. He also insists that, even if the claims are limited to the details of construction, the preponderance of the evidence shows that the defendant's structure embodies the subject-matter, and by the employment of substantially the same elemental features the identical functional result is attained.

The first proposition for discussion is whether the first and second claims disclose invention. None of the prior patents for sulkies or speed wagons contain the element of an "inclined arched brace for each frame and its spindles arranged substantially at forty-five degrees to said frame." I do not doubt the analogy between the sulkies and speed wagons; but nevertheless it is not clear to me that the patents cited by defendant relating to sulkies anticipate the patent in suit. The arrangement of complainant's arched brace connected to the spindles is not found in the prior art; nor does the brace found in sulkies or other vehicles suggest its application by the skilled in the art to the Phillips structure. It is true that in the patent to Windle, No. 587,828, the wagon body may be supported on the front and rear axles without using a pole or reach; yet such structure has not the arched brace connected to the spindles which is the essential element of the claims under discussion. The braces, j, in the Windle wagon are differently arranged than those of the Phillips structure, they being used to impart rigidity to the reach when fixed to the trusses; and, moreover, the truss frames are vertically arranged in connection with the spindles. But as they are without the inclined arched brace I do not think they can possibly attain the particular object of the patent in suit. The prior patent to Wells, No. 577,339, is for improvement in sulky to prevent the rocking motion. Braces are shown running from the spindles to the forward thills; but such structure does not anticipate the patent in suit, for it has not the truss

frame built from the wheels and the inclined brace of the claims in suit. The Perren speed wagon is also without the inclined brace, nor has it the arrangement for bracing the outer ends of the spindles; hence the spindles, being unsupported at their ends, lack the rigidity produced in complainant's arrangement of spindles. Nor does the Clark patent, No. 522,150, disclose the elements of claim 2. In the Phillips patent, as already observed, the arched brace inclines upwardly and at its upper end adjoins the straight portion lying in the same plane as the upper part of the vertical truss. This feature is not found in the Clark patent. There the inclined member is above the vertical member, and if a wagon body were put upon the frame the inclined member would be below the plane of the truss. Various other patents are cited in anticipation; but, as the elements are used in a different form or shape, they do not require special attention, in view of what has been said regarding the Windle, Wells, and Clark references.

In my estimation claims 1 and 2 are not devoid of invention. The patentee is not thought to have been a pioneer in the sense that he was the first to invent a light four-wheeled speed wagon without the necessity of a pole or reach; but by his adaptation he has improved wagons of this class by remedying certain indicated defects. It may be conceded that his improvement is not far removed from mechanical skill, yet it is believed that the conception was not so obvious as to remove any doubt which the court may entertain as to the necessity of exercising the inventive faculty in making the improvement. The claims should not be construed so narrowly as to deprive the patentee of the improvement he has concededly made in the speed wagon industry. The limitation of the claims in the patent office does not, in my estimation, operate to conclude the patentee from asserting that the details and mechanisms of construction of defendant's wagon and assembling of the parts was substantially such as pointed out in the specification in suit

## Infringement.

The defendant's speed wagon substantially embodies the elements of claims 1 and 2. Its truss frame does not extend perpendicularly to the wagon body, nor do its brace frames incline at an angle of 45 degrees thereto. But it is shown that the upward extension of the truss frame is about 76 degrees; that is, 14 degrees from the perpendicular. According to the complainant's expert witness Nathan, the angle between the truss frame and the arch brace in the defendant's structure is actually 52 degrees, and the expert witnesses for the defendant agree that an angle of 49 degrees practically covers the angle of complainant's structure. Upon this point I am satisfied that no new result or function is created by the difference in the angle of the truss frame. To strengthen this view it may be stated that the specification and claim 1 in suit refer to an inclination of the brace "of about forty-five degrees" and "substantially forty-five degrees." Nor does the adaptation by the defendant of a bar running from the slanting arched brace to join the inner side of the spindle secure a

different functional effect than that which is obtained by the arched brace of the patent in combination with the other elements of claim 1. The removal in defendant's structure of the thill connection further back from the point of connection of the thill with the clips of the Phillips patent does not avoid the claim covering the inventor's arrangement, nor do the words "above said spindles," contained in claim 4, call for a construction which would place the clip connection directly above the spindles. Claim 3, which apparently is broader than the others, is thought to be valid, as it includes the truss support carrying the wheel spindles and mentions the inclined brace engaging the ends of the spindles. Properly construed, this, of course, must be deemed to refer to "frames extending vertically upward" and connecting with the inclined frame substantially at the angle specified and as herein construed. The indicated difference in mounting the running gear in defendant's construction is inconsequential; and the round fifth wheel, while somewhat unlike that of complainant in form, appears to be supported across the frame and brace, to which it is firmly attached.

There is nothing novel in the employment of a fifth wheel in a speed wagon. In the Windle wagon the fifth wheel is not supported or braced by portions of the running gear. The essential feature of the claim in suit consists in mounting the fifth wheel in such manner as to support it across the arched frame and the inclined brace. I incline to the belief that by this method of construction rigidity is imparted to the running gear and that the manner of its construction and its functional effect was not obvious. The tenth and eleventh claims include the king-bolt located midway between the fifth wheel and its supporting brace. The king-bolt, of course, was familiar to the art; but, considered in the light of its use in combination with the rigid front frame and its inclined brace, it must be regarded as a detail of construction.

The various elements and features of construction of the Phillips invention, or their substantial equivalents, are used by the defendant in the construction of its speed wagon, and in consequence of such use and appropriation the functional characteristics of the patent in suit are secured thereby.

In my judgment complainant is entitled to a decree, with costs, for infringement of the involved claims, to wit, 1, 2, 3, 4, 7, 8, 10, and 11, and an accounting, as prayed for in the bill.